IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Ely Ould Marco, | : | |
| | : | Case No. 1:09-cv-761 |
| Plaintiff, | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING DEFENDANTS' |
| United States of America, *et al.*, | : | MOTION FOR SUMMARY |
| | : | JUDGMENT |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion for Summary Judgment (doc. 19). On October 20, 2009, Ely Ould Marco initiated this case by filing a Petition for Hearing on Naturalization, Complaint and Declaratory and Injunctive Relief ("Petition and Complaint") (doc. 1) seeking the Court to review de novo and grant his Application for Naturalization pursuant to 8 U.S.C. § 1421(c).[1]  Defendants are the United States of America; Eric Holder, Attorney General of the United States; Janet Napolitano, United States Secretary of Homeland Security; Alejandro Mayorkas, Director, United States Citizenship and Immigration Service ("USCIS"); Mark Hansen, District Director, USCIS; and Helaine Tasch, Field Office Director,

---

[1] The statute provides as follows:

A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

1

USCIS.

Marco asserts that he became a lawful permanent resident of the United States on September 21, 2005 and that he became eligible to be naturalized as a citizen on September 21, 2008. USCIS denied his Application for Naturalization on December 15, 2008. Defendants move for summary judgment on Marco's claim arguing that Marco was not lawfully admitted for permanent residence until April 13, 2010 and that he is not eligible for naturalization at least until April 13, 2013. For the reasons that follow, the Court will **GRANT** Defendants' Motion.

**I.     BACKGROUND**

The following background facts are derived from Defendants' Proposed Undisputed Facts (doc. 19-2) and Plaintiff's Response thereto (doc. 21-2) and are supported by the exhibits cited below.

**A.     Student Visa, Removal Proceedings, and Initial Application for Adjustment of Status**

Plaintiff Ely Marco is a native and citizen of Mauritania. Most recently, Marco entered the United States in 2003 as a nonimmigrant pursuant to a student (F-1) visa issued for him to attend Northern Kentucky University ("NKU").

On September 16, 2004, Immigration and Customs Enforcement ("ICE") officials arrested and detained Marco for failing to attend NKU in violation of his student visa. After he was arrested, Marco requested a hearing before the Immigration Court to determine whether he was entitled to remain in the United States. (Doc. 19 Ex. 4.) ICE released Marco after issuing him a copy of a Notice to Appear.[2] (*Id.* Ex. 5.) The Notice to Appear stated that Marco was

---

[2] Defendants assert that ICE "served" Marco a copy of the Notice to Appear, but Marco denies that providing him a copy of the Notice to Appear constituted "service."

charged with failing to maintain or comply with the conditions of his nonimmigrant status in violation of Section 237(a)(1)(C)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(C)(i), an offense which rendered him deportable from the United States. (*Id.*) The Notice to Appear ordered Marco to appear before "an immigration judge of the United States Department of Justice [in Cleveland, Ohio] *on a date to be set at a time to be set* to show why you should not be removed from the United States." (*Id.* (emphasis added).) The Notice to Appear was date stamped as received on October 5, 2004 by the Department of Justice, of which the Immigration Court is a part. (*Id.*)

Apart from the removal proceedings in Immigration Court, Marco initiated separate proceedings on January 28, 2005 with USCIS by filing an Application to Register Permanent Residence or Adjust Status ("Application to Adjust Status") (Form I-485). Marco sought in the Application to Adjust Status to adjust his status to that of an alien lawfully admitted for permanent residence based upon his marriage to a United States citizen. (Doc. 1-1 Ex. A.) On September 21, 2005, USCIS, acting with the belief that Marco's removal proceedings had not commenced in the Immigration Court, approved Marco's Application to Adjust Status. (*Id.* Ex. C.) Accordingly, USCIS purported to adjust Marco's status to that of a lawful permanent resident on September 21, 2005.

In the separate removal proceedings, on December 5, 2006, Marco received a Notice of Hearing, pursuant to which a hearing was set in the Immigration Court in Cleveland, Ohio for January 22, 2007. (*Id.* Ex. D.) At the hearing, Marco moved to terminate the removal proceedings on the grounds that USCIS had granted him lawful permanent resident status. Immigration Judge William Evans denied Marco's motion by an order dated March 21, 2007 for

3

the following reason:

> With the Notice to Appear pending [before the Immigration Court], the [USCIS] was without jurisdiction to adjudicate an application for adjustment of status and therefore [Marco's] status has not been adjusted to the [*sic*] of lawful permanent resident.

(Doc. 19 Ex. 7.)

USCIS continued to act in regard to Marco despite the Immigration Court's holding that USCIS lacked jurisdiction. On July 20, 2007, Marco filed a Petition to Remove Conditions on Permanent Residency (Form I-751). (Doc. 1-1 Ex. G.) USCIS approved the Petition on December 21, 2007. (*Id.* Ex. H.) USCIS also issued a Permanent Resident Card to Marco. (*Id.* Ex. I.)

In the concurrent removal proceedings before the Immigration Court, Marco moved to change venue to Cincinnati, Ohio and again moved to terminate the removal proceedings on August 28, 2007. (*Id.* Ex. E.) On September 13, 2007, Immigration Judge John Milo Bryant terminated the removal proceedings. (*Id.* Ex. F.) Judge Bryant did not state a reason for the termination in his order nor clarify if the proceedings were terminated with or without prejudice. (*Id.*)

**B.      Application for Naturalization and "Re-Opened" Application to Adjust Status**

On June 19, 2008, Marco filed an Application for Naturalization with USCIS. (*Id.* Ex. J.) On September 11, 2008, USCIS issued Naturalization Interview Results (Form N-652) stating that Marco had passed English, U.S. history, and government tests and that the agency was recommending approval of Marco's Application for Naturalization. (*Id.* Ex. K.)

However, on December 15, 2008, USCIS denied Marco's Application for Naturalization in a Decision dated December 15, 2008. (*Id.* Ex. L.) The USCIS stated as follows in the

Decision:

> You entered the United States on July 25, 2003 as an F-1 nonimmigrant student. You did not attend school. Because you failed to maintain your nonimmigration status, you were issued a notice to appear in front of an immigration judge (NTA) on September 16, 2004. A copy was simultaneously sent to the immigration court.
>
> On January 28, 2005, you filed an application to register permanent residence or adjust status (Form I-485). The Service did not have jurisdiction over your application because you were in proceedings when the application was filed. However, the Service incorrectly determined that the NTA had never been sent to the immigration judge. Due to this error, the Service improperly cancelled the NTA and erroneously aproved your I-485 application on September 14, 2005. You were then issued a permanent resident card, which is currently still in your possession.
>
> The immigration court has reviewed your case multiple times. On Mach [*sic*] 21, 2007, the immigration judge found, "the [USCIS] was without jurisdiction to adjudicate an application for adjustment of status and therefore the respondent's status has not been adjusted to the (sic) of lawful permanent resident."
>
> On October 15, 2007, the court terminated the removal proceedings. The immigration judge indicated that he was terminating your proceedings in order to allow you to pursue adjustment of status. The Service has reopened your I-485 application. However, to date, neither the court nor the Service has adjusted your status. Therefore, your status has not changed since the court found that you were not a lawful permanent resident.
>
> Because you are not a lawful permanent resident, you do not meet the prerequisites for naturalization listed in INA 316(a), and are ineligible to naturalize.

(*Id.*)

Also on December 15, 2008, USCIS issued a document entitled a Motion to Reopen which purported to reopen Marco's I-485 Application to Adjust Status. (*Id.* Ex. M.) The USCIS stated in the document as follows:

> The Service did not have jurisdiction over the I-485 application at the time it approved the application. The Immigration Judge has voided the Service's approval and returned jurisdiction over the application to the Service. As the

>    Service now has jurisdiction over the application, it is recommended that the case
>    be reopened and a new decision be made.

(*Id.*)

On January 29, 2009, in order to complete the processing for the reopened Application to Adjust Status, USCIS issued a Request for Evidence instructing Marco to submit updated medical documentation (Form I-693) required for the Application to Adjust Status. (Doc. 19 Ex. 9.) Marco objected to proceeding on the reopened Application, but nonetheless cooperated. (*Id.* Ex. 10.) Marco ultimately produced the requested medical documentation.

On February 12, 2009, Marco filed an administrative appeal with a Request for Hearing on Decision in Naturalization Proceedings. (Doc. 1-1 Ex. N.) On June 23, 2009, USCIS denied the appeal stating substantively the same reasoning which had been given in the December 15, 2008 decision. Specifically, the USCIS again concluded that "[t]he Service did not have jurisdiction to grant the applicant's adjustment of status on September 14, 2005." (*Id.* Ex. O.)

On April 13, 2010, USCIS issued a Notice of Action purporting to approve Marco's Application to Adjust Status on April 13, 2010. (Doc. 19 Ex. 11.) Thus, USCIS asserts that Marco became a lawful permanent resident on April 13, 2010.

## II. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## III. ANALYSIS

The ultimate issue in this case is whether Marco is eligible to become a naturalized citizen pursuant to the INA. The INA generally provides that a person whose spouse is a citizen of the United States is eligible to become a naturalized citizen three years after he or she becomes a lawful permanent resident. The key naturalization statute provides as follows:

> Any person whose spouse is a citizen of the United States . . . may be naturalized upon compliance with all the requirements of this subchapter except the provisions of paragraph (1) of section 1427(a) of this title if such person immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least three years, and during the three years immediately preceding the date of filing his application has been living in marital union with the citizen spouse . . . who has been a United States citizen during all of such period, and has been physically present in the United States for periods totaling at least half of that time and has resided within the State or the district of

7

>the Service in the United States in which the applicant filed his application for at least three months.

8 U.S.C.A. § 1430(a).

The INA also provides that "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter." 8 U.S.C. § 1429. Finally, the INA defines the term "lawfully admitted for permanent residence" as meaning "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). The parties dispute in this action whether Marco has been lawfully accorded the status of a lawful permanent resident for a period of at least three years, thus making him eligible for naturalization pursuant to 8 U.S.C. § 1430(a). More specifically, the parties dispute whether USCIS had jurisdiction to grant Marco's Application to Adjust Status to that of a lawful permanent resident on September 21, 2005.

**A.     Applications to Adjust Status and Removal Proceedings**

The authority to adjudicate an application to adjust status ordinarily lies with USCIS. The INA vests in the Attorney General the authority, "in his discretion and under such regulations as he may prescribe" to adjust the status of a nonimmigrant "to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a). This authority vested in the Attorney General by the INA has been transferred statutorily to the Secretary of the Department of Homeland Security and her delegate at USCIS. *See* 6 U.S.C. § 271(b); 6 U.S.C. § 557.

The issue of who has the authority to adjudicate an application to adjust status is complicated when removal proceedings are initiated against the nonimmigrant. The INA

provides that an "[I]mmigration [J]udge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). Removal proceedings in the Immigration Court are to be the "sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." 8 U.S.C. § 1229a(a)(3). Removal proceedings in the Immigration Court are initiated by issuing a notice to appear to the nonimmigrant alien which specifies, among other items, "the nature of the proceedings against the alien," "the acts or conduct alleged to be in violation of law," and "the charges against the alien and the statutory provisions alleged to have been violated." 8 U.S.C. § 1229(a)(1)(A), (C), and (D); *see also Asad v. Reno*, 242 F.3d 702, 705 (6th Cir. 2001) ("INS regulations indicate that deportation proceedings commence when the appropriate charging document is filed with the Immigration Court."). The notice to appear also must specify "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i).[3]

Pursuant to an INA regulation, jurisdiction vests with the Immigration Court upon the filing of the notice to appear:

> Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service. The charging document must include a certificate showing service on the opposing party pursuant to § 1003.32 which indicates the Immigration Court in which the charging document is filed.

8 C.F.R. § 1003.14. Section 1003.32 requires that "a copy of all documents . . . filed with or

---

[3] The regulations provide that the notice to appear shall specify the "time, place and date of the initial removal hearing, *where practicable*." 8 C.F.R. § 1003.18(b) (emphasis added). If that information is not contained in the notice to appear, "the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." *Id.*

9

presented to the Immigration Judge shall be simultaneously served by the presenting party on the opposing party or parties." 8 C.F.R. § 1003.32(a).

After the Immigration Court obtains jurisdiction for the removal proceedings, it also has exclusive jurisdiction to decide an application for adjustment of status: "In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the [I]mmigration [J]udge hearing the proceeding has *exclusive jurisdiction* to adjudicate any application for adjustment of status the alien may file." 8 C.F.R. § 1245.2(a)(1)(i) (emphasis added). This is consistent with a different regulation which provides as follows: "USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 CFR 1245.2(a)(1)." 8 C.F.R. § 245.2.

**B.     Application of the Law**

Defendants assert that removal proceedings were commenced against Marco in the Immigration Court on October 5, 2004 when the Notice to Appear was filed with the Immigration Court as evidenced by the date stamp on the Notice to Appear. 8 C.F.R. § 1003.14. At that point, Defendants contend, the Immigration Court had "exclusive jurisdiction" pursuant to 8 C.F.R. § 1245.2(a)(1)(i) to adjudicate Marco's Application to Adjust Status. Therefore, Defendants contend, the USCIS did not have jurisdiction to approve Marco's Application to Adjust Status on September 21, 2005. It follows that Marco was not "lawfully admitted for permanent residence" on September 21, 2005 pursuant to 8 U.S.C. § 1430(a) because the decision granting the Application to Adjust Status was not issued "in accordance with the immigration laws[,]" 8 U.S.C. § 1101(a)(20). Instead, Defendants contend that the USCIS

granted Marco lawful permanent resident status on April 13, 2010. Defendant concludes that Marco is not eligible pursuant to 8 U.S.C. § 1430(a) to be naturalized until April 13, 2013.

Marco asserts two primary arguments to rebut Defendants' position. First, Marco argues that jurisdiction did not vest with the Immigration Court prior to USCIS's approval of the Application to Adjust Status on September 21, 2005. He contends that jurisdiction did not vest in the Immigration Court when ICE officials issued Marco the Notice to Appear on September 16, 2004 because that charging document had not been filed with the Immigration Court on that date as required by 8 C.F.R. § 1003.14. He further contends that jurisdiction did not vest with the Immigration Court on October 5, 2004 when the Notice to Appear was stamped as received by the Immigration Court because the Notice to Appear did not specify the time and place of the removal hearing as required by 8 U.S.C. § 1229(a)(1)(G)(i). The thrust of Marco's argument is that the Immigration Court did not obtain jurisdiction until December 5, 2006 at the earliest, the date the Notice of Hearing was served on Marco. Service of the Notice of Hearing—which set the time and place of the removal hearing—satisfied the requirements of both 8 U.S.C. § 1003.14 and 8 C.F.R. § 1229(a)(1)(G). *See Mota-Roman v. Holder*, 331 F. App'x 379, 382-83 (6th Cir. 2009) (holding that a notice to appear and a notice of hearing combined to fulfill the statutory notice requirements contained in 8 U.S.C. § 1229(a)(1)); *Haider v. Gonzales*, 438 F.3d 902, 907-08 (8th Cir. 2006) (same). But, more than one year before December 5, 2006, USCIS already had purported to grant Marco lawful permanent resident status.[4]

---

[4] In fact, both Marco and his wife aver that they informed the USCIS in 2005 during the Application to Adjust Status process that Marco had received an Notice to Appear, but believed that the Notice to Appear had not been filed with the Immigration Court. (E. Marco Aff. ¶¶ 6, 8; C. Marco Aff. ¶¶ 7, 9.) The USCIS officer indicated to the Marcos that he would verify that information, (E. Marco Aff. ¶ 8; C. Marco Aff. ¶ 9), then subsequently, the USCIS approved the

Marco's interpretation of the INA requirements, however, has been rejected by the Sixth Circuit and other courts. The Sixth Circuit has held that jurisdiction vests with the Immigration Court pursuant to 8 C.F.R. § 1003.14(a) upon the filing of a notice to appear even when the notice to appear does not specify the time and place for the removal hearing. *Qumsieh v. Ashcroft*, 134 F. App'x 48, 49-51 (6th Cir. 2005). In *Qumsieh*, a notice to appear—which stated that the removal proceeding was "to be set"—was sent to the petitioner on June 19, 2000, the notice to appear was filed with the Immigration Court on July 3, 2000, and the notice of hearing was attempted to be delivered to the petitioner on July 5, 2000. *Id.* at 49.[5] The Sixth Circuit noted that the notice to appear was incomplete under 8 U.S.C. § 1229(a)(1)(G) because it did not contain the time and place for the removal proceeding. *Id.* at 50. Nonetheless, the Sixth Circuit found that the Immigration Court had obtained jurisdiction pursuant to 8 C.F.R. § 1003.14(a) over the removal proceedings on July 3, 2000, the date that the incomplete notice to appear was filed with the Immigration Court. *Id.* at 50; *see also Dababneh v. Gonzalez*, 471 F.3d 806, 807, 810 (7th Cir. 2006) (holding that jurisdiction vested with the Immigration Court when the notice to appear was filed, even though the notice of appear filed did not list the date or place of the removal hearing); *Haider*, 438 F.3d at 909-10 (same). Accordingly, the Court holds that pursuant to 8 C.F.R. § 1003.14(a) the Immigration Court obtained jurisdiction over Marco's removal proceedings on October 5, 2004, the date the Notice to Appear was filed in the Immigration Court.

Marco's second argument in opposition to granting Defendants' summary judgment is

---

Application to Adjust Status, (doc. 1-1 Ex. C).

[5] The notice of hearing contained an erroneous address for the petitioner. *Id.*

that the use of the term "jurisdiction" in 8 C.F.R. § 1003.14(a) and "exclusive jurisdiction" in 8 C.F.R. § 1245.2(a)(1)(i) should not be interpreted to vest exclusive subject-matter jurisdiction in the Immigration Court. Rather, Marco asserts that the term "jurisdiction" in the regulations should be understood to denote claim-processing rules. Claim-processing rules can be waived. Marco asserts that Defendants waived their jurisdiction defense and cannot now argue that USCIS lacked jurisdiction to adjust Marco's status in September 2005.

The Supreme Court recently has expounded upon the differences between claims-processing rules and subject-matter jurisdiction. The Supreme Court stated:

> Subject-matter jurisdiction properly comprehended, we emphasized, refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived. In contrast, a claim-processing rule, ... even if unalterable on a party's application, does not reduce the adjudicatory domain of a tribunal and is ordinarily forfeited if the party asserting the rule waits too long to raise the point.

*Union Pac. Ry. Co. v. Bhd. of Loco. Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 130 S. Ct. 584, 596 (2009) (internal quotation and citation omitted). The Supreme Court found the particular procedural rule adopted by the National Railroad Adjustment Board in *Union Pacific* to be a claim-processing rule in part because the agency was given authority from Congress to "set rules as it deem[ed] necessary to control proceedings," but not authority to adopt jurisdictional rules. *Id.* at 590, 597; 45 U.S.C. § 153(First)(v). In another opinion, the Supreme Court stated that claims-processing rules "do not limit a court's jurisdiction, but rather regulate the timing of motions or claims brought before the court." *Dolan v. United States*, 130 S. Ct. 2533, 2538 (2010). Similarly, the Supreme Court explained that jurisdictional rules address the power of the courts to hear certain classes of cases, while claim-processing rules address the rights and obligations of the parties. *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct.

1237, 1243 (2010).

The Court concludes, based on an examination of the relevant statute and regulations taken in context, that their use of the term "jurisdiction" denotes subject-matter jurisdiction.  To begin, the INA authorizes the Attorney General "in his discretion and under such regulations as he may prescribe" to adjust an alien's status to that of legal permanent resident.  8 U.S.C. § 1255(a).  Removal proceedings before an Immigration Judge are to be the "sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States."  8 U.S.C. § 1229a(a)(3).  Jurisdiction vests in the Immigration Court with the filing of the charging document.  8 C.F.R. § 1003.14(a).  At that point, the "[I]mmigration [J]udge hearing the [removal] proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file."  8 C.F.R. § 1245.2(a)(1)(i).  Additionally, a separate regulation provides that "USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, *unless* the immigration judge has jurisdiction to adjudicate the application under 8 CFR 1245.2(a)(1)."  8 C.F.R. § 245.2.

Taken together, the statutory and regulatory scheme seeks to regulate which tribunal has adjudicatory authority over applications to adjust status in different circumstances.  The Court concludes that 8 C.F.R. § 1003.14 and 8 C.F.R. § 1245.2 regulate the Immigration Court's subject-matter jurisdiction and are not merely a claims-processing rules.  Consistent with this holding, several federal courts have dismissed cases pending before them on the grounds that Immigration Court had exclusive subject-matter jurisdiction to adjudicate applications to adjust status pursuant to 8 C.F.R. § 1245.2.  *Zhao v. Chertoff*, No. 07-cv-4576, 2009 WL 700709, at *2 (E.D. N.Y. Mar. 15, 2009); *Lu v. Chertoff*, No. CV 08-3576, 2008 WL 4559747, at *2 (C.D. Cal.

Oct. 7, 2008); *Ishaq v. Dept. of Homeland Security*, No. Civ. A. H-06-1903, 2006 WL 2524090, at *2 (S.D. Tex. Aug. 31, 2006).  Marco has not cited to any cases which hold, to the contrary, that the regulations addressing jurisdiction constitutes only a claim-processing rules.

## IV.    CONCLUSION

The Court finds that the Immigration Court obtained the exclusive jurisdiction over Marco's Application for Adjustment as of October 5, 2004, the date the Notice to Appear was filed at the Immigration Court.  Therefore, USCIS lacked jurisdiction to grant Marco legal permanent resident status on September 21, 2005.  After the Immigration Court terminated the removal proceedings in 2007, USCIS reopened Marco's Application to Adjust Status.  USCIS then issued a Notice of Action granting Marco legal permanent resident status on April 13, 2010.  Marco is not eligible pursuant to 8 U.S.C.A. § 1430(a) to become a naturalized citizen until April 13, 2013, assuming that he satisfies all other prerequisites.  Defendants are entitled to judgment as a matter of law on Marco's claim for judicial determination of his Application for Naturalization.

For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 19) is **GRANTED**.

IT IS SO ORDERED.

>	___s/Susan J. Dlott_____
>	Chief Judge Susan J. Dlott
>	United States District Court